```
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
```
_____

HELEN HATFIELD MOORE,

              Plaintiff,        **15-CV-00908T**

      -v-                      **DECISION AND**
                                   **ORDER**

CAROLYN W. COLVIN, ACTING
Commissioner OF Social Security,

              Defendant.
_____

Helen Hatfield Moore ("plaintiff") brings this action under Title II of the Social Security Act ("the Act"), claiming that the Commissioner of Social Security ("Commissioner" or "defendant") improperly denied her applications for supplemental security income ("SSI") and disability insurance benefits ("DBI").

Currently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, plaintiff's motion is denied and defendant's motion is granted.

## **PROCEDURAL HISTORY**

On March 12, 2103, plaintiff filed applications for DIB and SSI alleging disability as of March 1, 2011, which was later amended to August 16, 2011. Administrative Transcript ("T.") 227-239, 270. Following denials of her applications initially on May 3, 2013 and June 13, 2013, upon reconsideration, plaintiff and

vocational expert ("VE") Beverly K. Majors testified at a hearing, that was held at plaintiff's request, on May 8, 2014 before administrative law judge ("ALJ") Richard LaFata. An unfavorable decision was issued on July 8, 2014, and a request for review was denied by the Appeals Council on September 3, 2015.

Considering the case *de novo* and applying the five-step analysis contained in the Social Security Administration's regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ made the following findings: (1) plaintiff met the insured status requirements of the Act through December 31, 2015; (2) she had not engaged in substantial gainful activity since August 16, 2011, the date of the onset of her alleged disability; (3) her degenerative disc disease was a severe impairment (20 CPR 404.1520(c) and 416.920(c)); (4) her impairment, or combination of impairments, did not meet or medically equal the severity of any impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926); and (5) plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.157(b) and 416.967(b) with the following limitations:  occasionally perform postural activities like climbing ramps or stairs, balancing, stooping, kneeling, crouching, and crawling but never climb ladders, ropes, or scaffolds. T. 15-16.

The ALJ also found that plaintiff is capable of performing past relevant work as a telemarketer (DOT# 299.357-014, sedentary, semi-skilled, SVP 3), a stocker (DOT# 290.477-014, light, semi-skilled, SVP 3), and a cashier (DOT# 211.462-014, light, semi-skilled, SVP 3). T. 19.

## DISCUSSION

### I. General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999), quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in

the record as a whole and whether the Commissioner's conclusions are based upon an erroneous legal standard. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003).

Plaintiff, 52 years old with a GED-level education, testified that she lived with her 22-year-old daughter, son-in-law, and granddaughter in a mobile home in Waskom, Texas. Plaintiff was five feet and one inch tall and weighed 240 pounds for about the last ten years, but she testified that her weight did not present an obstacle to maintaining her home or performing her daily functions. Plaintiff did not obtain any additional training or certifications beyond her GED. She denied using any alcohol or drugs.

In 2013, plaintiff worked for a medical supply assembly company for six days before she was terminated for failing to meet standards. She testified that, by the third day of constant sitting, she experienced shooting back pain that spread to her leg and hips. When she tried standing to alleviate the pain, she was repeatedly told that she was not allowed to do so in the unit area but had to wait until her break or lunch time. Plaintiff needed to stand for 15 minute before sitting down again and was able to sit for 30 to 60 minutes before switching positions again.

Although she had applied for many jobs, she had not performed any work since March 1, 2011, when she was terminated by her then employer, "Expert Communications," for whom she had worked since

4

2008 at $7.25 per hour. T. 47-49. After being promoted to night supervisor by the company and moving to an upstairs office, plaintiff fell twice while descending stairs and started missing "anywhere from two days at a time to one week," due to the resulting back pain. T. 47-48. Plaintiff had also previously worked as a dishwasher, retail store stocker, cook, cashier, and telemarketer.

Plaintiff testified that she was in several car accidents when she was younger, including one in the mid-1990s that caused her severe back and hip pain and a tingling sensation in her hands and feet. Because plaintiff did not have health insurance at that time, she was treated in the emergency room and had one follow-up appointment.

The VE testified in response to the ALJ's hypothetical question whether an individual of plaintiff's age, education, and experience was able to perform light work with the following limitations: occasional use of ramps and stairs; never climb ladders, ropes or scaffolds; occasional stooping, kneeling, crouching, and crawling; and never work from unprotected heights. The VE opined that such a person could perform plaintiff's past work as a telemarketer, stocker, cashier, and kitchen helper. She further opined that such an individual could perform the work of a rental clerk and light office clerk. Such jobs would still exist for someone who needed to change postural positions between sitting

and standing at their workstation for about five minutes every hour.  At the sedentary exertional level, such individual could still perform the work of a telemarketer, as well as sedentary receptionist, order clerk, and "call out operator." T. 80-82.

## II. The Commissioner's Decision Denying Plaintiff Benefits is Supported by Substantial Evidence in the Record.

Plaintiff's sole contention on appeal concerns the ALJ's assessment of her credibility.  Plaintiff contends that the ALJ erred when he discounted her subjective complaints on the basis of her limited and conservative medical treatment history without further inquiring whether she could afford treatment or and medical insurance.  Defendant responds that the ALJ's credibility determination is based on substantial evidence, including objective medical examination results and diagnostic imaging, and that there was no affirmative indication in the record that she was unable to afford treatment.

It is well settled that to establish disability, there must be an underlying physical or mental impairment demonstrated by clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptoms alleged. *See* 20 C.F.R. § 416.929(b); *Gallagher v. Schweiker*, 697 F.2d 82, 84 (2d Cir. 1983). When such an impairment exists, objective medical evidence, if available, must be considered in determining whether disability exists.  *See* 20 C.F.R. § 416.929 (c)(2).  Where plaintiff's symptoms suggest an even greater restriction of function than can

be demonstrated by the medical evidence, the ALJ may consider factors such as her daily activities, the location, duration, frequency and intensity of pain, any aggravating factors, the type, dosage, effectiveness, and adverse side-effects of medication, and any treatment or other measures used for pain relief. *See* 20 C.F.R. § 416.929(c)(3); Social Security Ruling ("SSR 96-7p"), (July 2, 1996), 1996 WL 374186, at *7. It is well within the ALJ's discretion to evaluate the credibility of plaintiff's testimony and assess, in light of the medical findings and other evidence, the true extent of her symptoms. *See Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984); *Gernavage v. Shalala*, 882 F.Supp. 1413, 1419 (S.D.N.Y. 1995).

> In his credibility determination, the ALJ found that:
>
> The limited medical history and the conservative nature of [plaintiff's] medical treatment reduce the credible sustainability of the alleged functional impact of [her] impairments. [Plaintiff] sought medical treatment approximately twice per year due to symptoms related to her impairments, and in those examinations, [plaintiff] was prescribed pain medications to improve her symptoms. Impairments causing the degree of limitations alleged would generally require more medical
> treatment and hospitalizations including more invasive physical medicine treatment modalities and/or consideration for surgery.

T. 18. The ALJ also noted that plaintiff's "medical reports do not depict [her] impairments as causing the degree of limitations alleged." T. 18. The ALJ points out that, although plaintiff's recent diagnostic imaging reveals "some degenerative disc disease that would cause her some degree of the pain and limited mobility

that she alleges, . . . she generally maintained normal physical functioning throughout the alleged disability period." T. 18.

During the hearing, plaintiff testified that she did not have medical insurance at the time of her automobile crash, which occurred in 1994 or 1995. T. 46. Her attorney also advised the ALJ that plaintiff "had an emergency visit at Longview Regional Medical Center March 8, 2014, due to falling [and] extreme back pain," and stated: "They actually did X-rays so if you see in the record, we don't have any since 2012. And the reason for that is because she doesn't have insurance." T. 31.

The records reveals that plaintiff was treated at the Longview Regional Medical Center emergency room for a back injury after falling down stairs. T. 330, 336. X-ray imaging of the lumbosacral spine revealed degenerative changes, mild narrowing of the L5-S1 disc space with vacuum disc phenomenon, and mild spondylosis of the lumbar spine. She exhibited tenderness overlying the sacrum, and spasm in the paraspinous muscles with mild to moderate tenderness. In May 4, 2012, she was again treated in the emergency room of the Longview Regional Medical Center on May 4, 2012 for lower back pain after lifting a heavy box and was diagnosed with acute lumbar myofascial strain, acute low back pain, and acute muscular spasm. She reported moderate, sharp pain exacerbated by moving, standing, and changing positions, and she received prescriptions for Flexeril and acetaminophen and codeine.

On November 5, 2012, plaintiff was treated in the emergency room of the Good Shepard Memorial Center for acute back pain after falling the previous day. She exhibited pain with range of motion bank and vertebral tenderness at L3, L4, L5, and sacrum. X-ray imaging revealed degenerative disc disease, facet hypertrophy at L4-5 and L5-S1, and minimal anterior osteophyte formation throughout the lumbar spine. She was diagnosed with acute low back pain, acute back sprain, and acute contusion and received prescriptions for Keflex and Norco.

Plaintiff suffered another fall after losing consciousness on March 15, 2014 and was treated at Good Shepard Memorial Center emergency room for acute back pain and lumbar spine sprain with prescription medication. CT imaging revealed moderate degenerative changes, with multilevel degenerative disc narrowing and mild bony spurring, of the cervical spine and minor lower degenerative change, including vacuum discs at L3-4 and L4-5 and congenital disc narrowing at L5-S1, of the lumbar spine, with facet arthrosis inferiorly. T. 409. In April 2014, she was treated in the emergency department for a bladder infection.

Based on its review of the foregoing record evidence, the Court concludes that the ALJ's credibility determination is supported by substantial objective medical evidence in the record. Pursuant to Social Security Rule 96-7p, the ALJ has a duty, in assessing credibility, to inquire about possible explanations for

lack of treatment. *See Garrett v. Astrue*, 2007 WL 4232726, at *9 (W.D.N.Y. 2007) (holding it "improper for ALJ to question plaintiff's credibility based solely on her inability to afford pain medication"); *Young v. Comm'r of Soc. Sec.*, 2014 WL 3107960, at *11 (N.D.N.Y. 2014).

Although the hearing testimony and plaintiff's history of emergency room visits here suggest that plaintiff's access to treatment may have been limited at times by her lack of medical insurance and financial resources, the Court finds no indication that the ALJ challenged plaintiff's credibility solely based on her lack of treatment or inability to afford it. In addition to the objective medical evidence listed above, the ALJ noted the negative result of her straight-leg raise test, which indicating "that her pain levels are not so significant that they could not be accommodated during the normal breaks available throughout the workday." T. 18.

The ALJ gave "great weight . . . to the assessments of the state medical consultants who all determined that [plaintiff] could perform at a reduced light exertional level because their assessments are consistent with the [plaintiff's] functioning throughout the record." T. 19; *See* 109-110. The ALJ also referred to the physical examination records, which revealed consistently normal findings in plaintiff's extremities, neurological functioning, range of motion (sometimes reduced), muscle strength,

gait, and heel and toe balance, despite her back pain, which she reported to be mild as of April 2014. T. 323, 346-349, 402, 393.

Based on the foregoing, the Court finds no error in the ALJ's assessment of plaintiff's credibility, which indicates that the ALJ used the legal proper standard and considered the relevant factors contained in the Regulations to reach his finding. As such, remand is not required.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for judgment on the pleadings is denied, and the Commissioner's cross-motion for judgment on the pleadings is granted. The ALJ's decision denying plaintiff's claims for SSI and DIB is supported by substantial evidence in the record. The Clerk of Court is directed to close the case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/ MICHAEL A. TELESCA
HONORABLE MICHAEL A. TELESCA
UNITED STATES DISTRICT JUDGE

DATE:   December 5, 2016
        Rochester, New York